UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SHANTELL YVONNE HARRIS AND
SHONTELL LAVORA HARRIS,

      PLAINTIFFS,

v.

                              Case No.:

LEXISNEXIS RISK SOLUTIONS, INC.
AND HORACE MANN INSURANCE
COMPANY,

                              ***JURY TRIAL DEMANDED***

      DEFENDANTS.

## COMPLAINT

Plaintiffs Shantell Yvonne Harris and Shontell Lavora Harris ("Plaintiffs"), by and through the undersigned counsel, and with knowledge as to Plaintiff's own acts, upon information, belief, and investigation of counsel as to the acts of others, believing such allegations have evidentiary support after a reasonable opportunity for further investigation or discovery alleges against Defendants LexisNexis Risk Solutions, Inc. ("Lexis") and Horace Mann Insurance Company ("Horace Mann") as follows:

## PRELIMINARY STATEMENT

1.      This is an action for an actual, statutory and punitive damages, costs and attorneys' fees pursuant to 15 U.S.C. §§ 1681, *et seq*. ("Fair Credit Reporting Act" or "FCRA").

2.      Congress enacted the FCRA "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. 91-517 (1969).

3.      The FCRA's stated purpose is to require consumer reporting agencies to "adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance and other information in a manner which is fair and equitable to the consumer, with

regard to confidentiality, accuracy, relevancy, and proper utilization of such information."   15 U.S.C. § 1681.

4.      Congress made the following findings when it enacted the FCRA:

(1) The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

(2) An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers.

(3) Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers.

(4) There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.

15 U.S.C. § 1681(a)(1-4).  Thus, one of the fundamental purposes of the FCRA is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter." 15 U.S.C. § 1681(b).  Accordingly, "[t]he FCRA evinces Congress' intent that consumer reporting agencies, having the opportunity to reap profits through the collection and dissemination of credit information, bear 'grave responsibilities.'"  *Cushman v. Trans Union*, 115 F.3d 220, 225 (3d Cir. 1997).

5.      In furtherance of its underlying purposes, the FCRA sets out requirements and obligations for consumer reporting and requires that all consumer reports be as accurate as possible. 15 U.S.C. § 1681e(b).

6.      In furtherance of this purpose, the FCRA sets forth requirements and obligations that consumer reporting agencies must follow when consumers dispute the accuracy of any item of information contained in the consumer's file, as that term is defined by 15 U.S.C. § 1681a(g).

7.      Indeed,

> Credit is the lifeblood of the modern American economy, and for the American consumer access to credit has become inextricably tied to consumer credit scores as reported by credit reporting agencies. In 1970, the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA") was enacted "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 52 (2007). Towards that end, the FCRA requires a company that reports consumer credit information, referred to as a consumer reporting agency ("CRA"), to "adopt reasonable procedures for meeting the needs of commerce" which are "fair and equitable to the consumer." 15 U.S.C. § 1681(b).

*Burke v. Experian Info. Sols., Inc.*, No. 1:10-CV-1064 AJT/TRJ, 2011 WL 1085874, at *1 (E.D. Va. Mar. 18, 2011).

8.      Accordingly, and:

> In recognition of the critical role that CRAs play in the credit markets and the serious consequences borne by consumers because of inaccurate information disseminated in consumer credit reports prepared by CRAs, Congress placed on a CRA what can only be described as very high legal duties of care, set forth, as they apply to this case, in 15 U.S.C. §§ 1681e(b), 1681i(a)(1)(A), and 1681i(a)(3)(A).

*Burke v. Experian Info. Sols., Inc.*, No. 1:10-CV-1064 AJT/TRJ, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011).

9.      "Mixed files" create a false description of a consumer's credit history.

10.     The Federal Trade Commission ("FTC") defines a mixed file as a file that "refers to a Consumer Report in which some or all of the information pertains to Persons other than the

Person who is the subject of that Consumer Report." *F.T.C. v. TRW, Inc.* 784 F. Supp. 361, 362 (N.D. Tex. 1991).[1]

11.     Mixed files result in the disclosure of a consumers' most personal identifying and financial information absent the consumer's knowledge or consent, or both.

12.     Mixed files are not a new phenomenon.

13.     Defendants knew, or should have known, of the existence of mixed files for almost forty-two years.  *See Thompson v. San Antonio Retail Merchants Ass'n*, 682 F.2d 509, 511 (5th Cir. 1982).

14.     The FTC had specifically warned consumer reporting agencies to review their procedures when a mixed file case occurs.

15.     Defendants knew, or should have known, of the existence of the multiple government enforcement actions against the nationwide consumer reporting agencies since the 1990s related to the incidence of mixed files. *See also In the Matter of Eric T. Schneiderman, Attorney General of the State of New York v. Experian Information Solutions, Inc.; Equifax Information Services, LLC; and TransUnion LLC* (2012), in 2014, Ohio Attorney General, Mike DeWine, and thirty-one other states, including Florida; and, 2014, the Mississippi Attorney General filed a separate action related to mixed files.[2]

16.     Private FCRA lawsuits have resulted in multi-million-dollar verdicts for consumers with mixed files. See *Judy Thomas v. Trans Union LLC,* District of Oregon, Case No. 00-1150-JE (jury awarded Ms. Thomas $5 million in punitive damages and $300,000 in actual damages); *Angela Williams v. Equifax Information Services, LLC,* Circuit Court for Orange County Florida,

---

[1] Experian is formerly known as TRW, Inc.

[2]     http://www.nola.com/business/index.ssf/2014/06/mississippi_sues_credit-report.html     Last visited July 20, 2020.

Case No. 48-2003-CA-9035-0 (jury awarded plaintiff $2.7 million in punitive damages and $219,000 in actual damages); *Julie Miller v. Equifax Information Services, LLC,* District of Oregon, Case No. 3:11-cv-01231-BR (jury awarded plaintiff $18.4 million in punitive damages and $180,000 in actual damages); and, *Ramirez v. TransUnion LLC*, Case No. 3:12-cv-00632 (N.D. Cal. Jun. 20, 2017) (jury awarded class members $60 million in damages).

17.    Lexis has been sued over one-hundred times in federal court, wherein the plaintiff alleged said defendant violated the FCRA.

18.    Upon information and belief, Lexis has been notified by consumers hundreds of times that Lexis mixed items of information for one consumer with that of another consumer.

19.    "Evidence that a defendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful would provide relevant support for an argument that strong medicine is required to cure the defendant's disrespect for the law."  *Dalton v. CAI*, 257 F.3d 409, 418 (4th Cir. 2001) (noting that whether "other consumers have lodged complaints similar to Dalton's against CAI" is relevant to willfulness under the FCRA).

20.    No less than three federal Courts of Appeal have held a consumer reporting agency violated § 1681e(b) and may be found to have willfully violated the FCRA when it mixed a consumer's file with another consumer.

21.    Despite federal law, Congressional mandate, federal and state government enforcement actions, thousands of consumer lawsuits, mixed files remain a significant problem for consumers, including Plaintiff.

22.    Likewise, the FCRA imposes duties on persons who furnish information to CRAs ("furnishers").  *See* 15 U.S.C. §§ 1681s-2(a), (2), (4), (5).

23.    Specifically, furnishers must satisfy five duties after receipt of notice of a consumer dispute from a CRA.  15 U.S.C. § 1681s-2(b)(1)(A-E); *see also Boggio v. USAA Fed. Sav. Bank,*

696 F.3d 611, 618 (6th Cir. 2012).

24.    In some circumstances, a reasonable investigation may require the furnisher go beyond its own records and contact third parties.  *Fregoso v. Wells Fargo Dealer Serv., Inc.*, 2012 WL 4903291 (C.D. Cal. Oct. 16, 2012).

25.    It is not sufficient for the furnisher to merely perform a reasonable investigation, it must also communicate the results of its investigation back to the CRA. *Johnson v. MBNA Am. Bank*, 357 F.3d 426, 432 (4th Cir. 2004).

26.    The furnisher's failure to report an item of information as disputed is materially misleading and violates the FCRA. See *Seamans v. Temple Univ*., 744 F.3d 853, 867 (3d Cir. 2014); *Llewellyn v. Allstate Home Loans*, *Inc*., 711 F.3d 1173, 1186 (10th Cir. 2013); *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1164 (9th Cir. 2009); and, *Saunders v. Branch Banking & Trust Co. of Va., 526 F.3d 142, 150 (4th Cir. 2008).*

27.    Lexis is in the business of selling consumer reports and sells millions of consumer reports per year.

28.    The sale of consumers' most private and sensitive personal and financial information is a multi-billion-dollar industry.

29.    Lexis receives more than $500,000,000 in revenue per year related to the sale of consumer reports or consumer information, or both.[3]

30.    In 2019, Horace Mann received more than $1,400,000,000 in revenue[4].

31.    LexisNexis also sells various items of information, including but not limited to "header information" and public record information to the nationwide CRAs and insurance

---

[3] https://www.dnb.com/business-directory/companyprofiles.lexisnexis_risk_solutions_inc.65ade48305f9d7833f1a9cb0a6e627b7.html Last visited July 19, 2020.
[4] https://www.businesswire.com/news/home/20200205005819/en/Horace-Mann-Reports-Strong-2019-Results  Last visited July 20, 2020.

companies, including Horace Mann.

32.     An "inquiry" on a consumer report is the identification of a person or business that obtained a consumer report from Lexis pertaining to the consumer in connection with a credit or other transaction involving the consumer.

33.     Inquiries are items of information contained in a consumer's "file," as defined by 15 U.S.C. § 1681(a)(g).

34.     Like other items on a consumer report (commonly known as a "credit report"), inquiry information is sometimes inaccurate.

35.     Lexis records and retains inquiries in consumers' files.

36.     As a consumer reporting agency, Lexis is required by the FCRA to reinvestigate the accuracy of "any item of information" that is disputed by a consumer.   15 U.S.C. § 1681i(a)(1)(A).

37.     As part of the reinvestigation, Lexis must notify the source of the disputed information about the dispute and provide the source with all relevant information provided by the consumer with the dispute.  15 U.S.C. § 1681i(a)(2)(A).

38.     Regulatory guidance from the Federal Trade Commission further elucidated a consumer reporting agency's duty to reinvestigate disputed inquiries or delete them, to wit:

> When a CRA receives a dispute from a consumer alleging that an inquiry that appears in his/her file was not made by a person who had a permissible purpose for obtaining the consumer report, and those allegations are supported by the CRA investigation, the CRA has two options. It may either delete the inquiry as inaccurate, or amend the file to make the item "complete" by reflecting clearly that the inquiry was generated by a party who did not have a permissible purpose to obtain a consumer report on the consumer.

*See* FEDERAL TRADE COMMISSION, 40 YEARS OF EXPERIENCE WITH THE FAIR CREDIT REPORTING ACT: AN FTC STAFF REPORT WITH SUMMARY OF

INTERPRETATIONS 77 (2011).[5]   The Eleventh Circuit Court of Appeals has held that a consumer reporting agency like Equifax violates section 1681i(a)(1) if it fails to do a reasonable reinvestigation when a consumer disputes "information contained in his file." *Collins v. Experian Information Solutions, Inc.*, 775, F.3d 1330, 1335 (11th Cir. 2015) ("[a] file is simply the information retained by the consumer reporting agency.").

39.   Other courts of appeals have for many years also instructed CRAs to reinvestigate any item that it reports and that a consumer disputes, regardless of the context. *See Cortez v. Trans Union, LLC*, 617 F.3d 688, 711-13 (3d Cir. 2010) (OFAC terrorist alerts that CRA keeps off site with another company but placed on its credit reports are in the consumer file and must be reinvestigated); *Morris v. Equifax Information Services, LLC*, 457 F.3d 460, 466-68 (5th Cir. 2006) (Equifax must reinvestigate store charge account that is on file kept by one of Equifax's affiliates but which can be sold by Equifax in its credit reports); *Pinner v. Schmidt*, 805 F.2d 1258 (5th Cir. 1986); *Bryant v. TRW, Inc.*, 689 F.2d 72 (6th Cir. 1982); *Dennis v. BEH-1, LLC*, 520 F.3d 1067 (9th Cir. 2008).

40.   Indeed:

> More than simply comporting with the plain language of the statute, [requiring reinvestigation of inquiry disputes] best serves to advance the purpose of FCRA's reinvestigation requirements—ensuring the accuracy of the information used by creditors to determine a consumer's creditworthiness.   As the Eleventh Circuit has noted, the standard of accuracy imposed by the FCRA "should be interpreted in an evenhanded manner toward the interests of both consumers and potential creditors in fair and accurate credit reporting." *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1158 (11th Cir. 1991).   The interests of consumers and potential creditors are best served by deletion of hard inquiries that Equifax itself admits "misstate[]" the consumer's credit history. Consumer's credit scores are negatively impacted by fraudulent or inaccurate credit inquiries, and creditors are provided with an inaccurate portrait of the consumer's credit history.   The only entity that benefits is Equifax, which does not have to expend resources reinvestigating disputed credit inquiries.

---

[5]      https://www.ftc.gov/sites/default/files/documents/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary-interpretations/110720fcrareport.pdf   ("40 Year Staff Report"). Last visited July 20, 2020.

*Steed v. Equifax Information Services, LLC*, No. 1:14-cv-0437-SCJ, 2016 WL 7888039, at *4 (N.D. Ga. Aug. 31, 2016).

41.     Despite the FCRA's requirement that Lexis reinvestigate any information that is disputed by a consumer and guidance from the FTC and Eleventh Circuit, Lexis routinely fails to reinvestigate "inquiry" information that is disputed by a consumer.

42.     Lexis ignores its legal obligation to reinvestigate disputes of inquiries, and, upon information and belief, has no policy whatsoever on how to process disputed inquiries.

43.     Upon information and belief, Lexis does not delete disputed inquiries upon receipt of a consumer dispute.

44.     Upon information and belief, Lexis does not notify the source of the information of the dispute or provide all relevant information provided by the consumer with the dispute.

45.     Lexis and Horace Mann have negligently or willfully violated the requirements of the FCRA.

## JURISDICTION & VENUE

46.     This Court has jurisdiction pursuant to 28 U.S.C § 1331 and 15 U.S.C. § 1681p.

47.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b).

## PARTIES

48.     Plaintiff Shantell Yvonne Harris, ("SY Harris") is an adult individual and resides in this judicial district.  SY Harris is a "consumer" as defined by 15 U.S.C. §§ 1681a(c).

49.     Plaintiff Shontell Lavora Harris, ("SL Harris") is an adult individual and resides in this judicial district.  SL Harris is a "consumer" as defined by 15 U.S.C. §§ 1681a(c).

50.     Defendant Lexis does business in this judicial district and is a Georgia corporation with its principal place of business located at 1000 Alderman Drive, Alpharetta, Georgia 30005.

51.     Defendant Lexis is a CRA as defined by 15 U.S.C. § 1681a(f).  Lexis regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties.  Lexis disburses such consumer reports to third parties of contract for monetary compensation.

52.     Defendant Horace Mann is a person who furnishes information to consumer reporting agencies under FCRA, 15 U.S.C. § 1681s-2[6], and conducts substantial and regular business activities in this judicial district.   Horace Mann is a foreign corporation with its principal place of business located at 1 Horace Mann Plaza, Springfield, Illinois 62715.

## FACTUAL ALLEGATIONS
### (SY Harris)

53.     Lexis prepared and sold consumer reports relating to SY Harris to third parties with inaccurate and derogatory information.

54.     The inaccurate information includes, but is not limited to, personal identifying information, addresses, driver's license number and insurance claim history. More specifically, Horace Mann prepared consumer reports related to SY Harris that included, *inter alia*, SL Harris' name, addresses, driver's license number and insurance claim history.

55.     The inaccurate information harms SY Harris' reputation because it does not accurately depict her personal characteristics, driving or insurance history.

56.     Beginning in 2019, SY Harris made no less than two disputes to Lexis. However, Lexis did not delete or reinvestigate all of the disputed items of information.  Alternatively, Lexis

---

[6] SY Harris is making claims against Horace Mann under § 1681s-2(b).  SY Harris is not making a claim against said defendant under § 1681s-2(a).

failed to consider all relevant information and perform a reasonable reinvestigation of the disputed items of information.

57.     In response to SY Harris' disputes, Lexis did not contact third parties concerning the accuracy of the disputed information, including but not limited to, Direct General Insurance Company, SL Harris or Tareia Harris.

58.     In response to SY Harris' second dispute, Lexis did not take any action to reinvestigate the disputed items of information and instead, notified SY Harris that it could not locate her file.

59.     Lexis did not make a reasonable inquiry into the disputed information.

60.     Lexis took no action to reconcile different Florida driver's license numbers that appeared in SY Harris' file and that were reported to it by Horace Mann.

61.     Lexis did not conduct any handwriting analysis on SY Harris' signatures or the signatures related to the items of information that were disputed by SY Harris.

62.     Lexis did not review all relevant information provided by Plaintiffs related to the disputed items of information.  For example, Lexis did not consider the conflicting names, addresses or driver's license numbers reported with the claims that appeared in SY Harris' file.

63.     At best, Lexis verified the false information by confirming some of SY Harris' personal identifying information with some of the personal identifying information reported by the data furnishers who supplied the disputed information.

64.     Alternatively, Lexis simply parroted Horace Mann's response that it verified the disputed information.

65.     Lexis failed to modify or delete all of the inaccurate information.

66.     SY Harris requested Lexis to provide them her the steps it undertook while reinvestigating her disputes.  On at least one occasion, Lexis failed to provide SY Harris with the steps it undertook while reinvestigating the disputed items of information.

67.     SY Harris requested Lexis to provide her with her file.  On at least one occasion, Lexis failed to provide SY Harris with her file.

68.     SY Harris requested Lexis to provide her with her file due to fraud.  On at least one occasion, Lexis failed to provide SY Harris with her file in response to her request due to fraud.

69.     Despite SY Harris' exhaustive efforts to date, Lexis has nonetheless deliberately, willfully, intentionally, recklessly and negligently repeatedly failed to comply with its duties as required by the FCRA.

70.     SY Harris disputed the inaccurate information directly to Horace Mann.

71.     Horace Mann failed to report the disputed item of information with the appropriate account in dispute code to Lexis or any other CRAs.

72.     SY Harris disputed the inaccurate information to Lexis.

73.     Lexis notified Horace Mann of the disputed information.

74.     Horace Mann notified Lexis that it verified the disputed information.

75.      As a part of Horace Mann's FCRA investigation, it did not:

    a.  contact SY Harris concerning the accuracy of the disputed information;

    b.  contact third parties, including but not limited to law enforcement or SL Harris, concerning the accuracy of the disputed information;

    c.  review underlying documents, such as police reports or personal identifying information related to the disputed information;

    d.  reconcile conflicting identifying information, such as the name, driver's license number and address associated with the disputed insurance claim;

e.   conduct any handwriting analysis on SY Harris' signature and any signature associated with the disputed information, and in its own records;

f.   review all relevant information provided by Lexis, or any other consumer reporting agency, pertaining to the disputed information;

g.   modify or delete the false insurance information; or,

h.   mark or identify the item of information as in dispute.

76.   At best, Horace Mann verified the false and derogatory insurance information by confirming some of SY Harris' personal identifying information related to the identifying information with some of the personal identifying information reported by Lexis.

77.    Horace Mann notified at least one consumer reporting agency that its reporting of the inaccurate information was accurate and did not include any notation that the information was the subject of a bona fide dispute.

## FACTUAL ALLEGATIONS
## SL HARRIS

78.   The inaccurate information includes, but is not limited to, public record information, personal identifying information and inquiries.   More specifically, the derogatory and inaccurate information includes multiple traffic violations, an eviction and unlawful detainer action. Upon information belief, SL Harris' file also includes insurance information that relates to another person, presumably, SY Harris.

79.   The inaccurate information harms SL Harris' reputation because it does not accurately depict her driving, credit, tenant or insurance history.

80.   Beginning in 2019, SL Harris disputed the inaccurate information to Lexis. In response to Plaintiff's first dispute made in or around August 2019, Lexis deleted 91 items of information from her file.  However, Lexis did not delete or reinvestigate all of the disputed items

of information.  Alternatively, Lexis failed to consider all relevant information and perform a reasonable reinvestigation of all of the disputed items of information.

81.     SL Harris made a second dispute to Lexis in or around February 2020 by certified mail return receipt requested.  In response to SL Harris' dispute, Lexis deleted 41 more items of information from her file.  However, Lexis did not delete or reinvestigate all of the disputed items of information.  Alternatively, Lexis failed to consider all relevant information and perform a reasonable reinvestigation of the disputed items of information.

82.     Lexis prepared SL Harris' consumer report for third parties when requests were made for SY Harris' report.

83.     SL Harris' disputes included three hard inquiries that appeared in her Lexis file: (1) Basix; (2) Miinan Funds; and, (3) Enova Financial.  Each of the inquiries were made by Lexis' customers who requested SY Harris' consumer report - not SL Harris' report.  Lexis knew, or should have known, that the inquiries were made by its customers who were requesting a different consumer's report because the request included SY Harris' Social Security number, name and address.

84.     Lexis received SL's Harris' inquiry dispute on February 10, 2020.

85.     Lexis did not reinvestigate any of the disputed inquiries.

86.     Lexis did not delete any of the disputed inquiries.

87.     Lexis did not notify Basix of SL Harris' dispute.

88.     Lexis did not notify Miinan Funds of SL Harris' dispute.

89.     Lexis did not notify Enova of SL Harris' dispute.

90.     Upon information and belief, Lexis has no policy or procedure wherein it will reinvestigate disputed inquiries.

14

91. Upon information and belief, Lexis has no policy or procedure wherein it will delete disputed inquiries.

92. Upon information and belief, Lexis has no policy or procedure wherein it will notify its customers (*e.g.*, the users of the reports that are the subject of the disputed inquiry) of the consumer's dispute.

93. In response to SL Harris' disputes, Lexis did not contact third parties concerning the accuracy of the disputed information, including the Clerk of the Court for Hillsborough, Osceola or Polk counties to determine who the public records related to - either SY Harris or SL Harris.

94. Lexis did not make a reasonable inquiry into the disputed information.

95. Lexis did not review the public records to determine who the public records related to for each public record contained in SL Harris' file or the subject of her disputes, or both.  Had it, Lexis would have easily seen who the public records related to as information contained in the dockets include, *inter alia*, the parties' first, middle and last name.  Additionally, many of the records contain different Florida driver's license numbers.

96. Lexis did not conduct any handwriting analysis on SL Harris' signature or any of the signatures related to the items of information that were disputed by her.

97. Lexis did not review all relevant information provided by Plaintiffs related to the disputed items of information.  For example, Lexis did not consider the conflicting names, addresses or driver's license or Social Security numbers in SL Harris' file.

98. At best, Lexis verified the false information by confirming some of SL Harris' personal identifying information with some of the personal identifying information related to the disputed information.

99. Lexis failed to modify or delete all of the inaccurate information.

100.    SL Harris requested Lexis to provide her the steps it undertook while reinvestigating her disputes.  On at least one occasion, Lexis failed to provide SL Harris with the steps it undertook while reinvestigating the disputed items of information.

101.    SL Harris requested Lexis to provide her with her file.  On at least one occasion, Lexis failed to provide SL Harris with her file.

102.    SL Harris requested Lexis to provide her with her file due to fraud.  On at least one occasion, Lexis failed to provide SL Harris with their files in response to her request due to fraud.

103.    SL Harris requested Lexis to redact her Social Security number when providing her with her file.  On at least one occasion, Lexis failed to redact SL Harris' Social Security number on her report.

104.    Despite SY Harris' exhaustive efforts to date, Lexis has nonetheless deliberately, willfully, intentionally, recklessly and negligently repeatedly failed to perform reasonable reinvestigations of the above disputes as required by the FCRA.

105.    As of result of the defendants' conduct, Plaintiffs have suffered unique and distinct actual damages in the form of adverse credit action, denial of credit, higher insurance rates, lost credit opportunities, harm to credit reputation and credit score, out-of-pocket expenses, interference with Plaintiffs' normal and usual activities and emotional distress, including anxiety, frustration, embarrassment and humiliation.

106.    At all times pertinent hereto, the defendants were acting by and through their agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the defendants herein.

107.    At all times pertinent hereto, the conduct of the defendants, as well as that of their agents, servants and/or employees, was intentional, willful, reckless, and in grossly negligent disregard for federal laws and the rights of the Plaintiff herein.

108.    The defendants' conduct was a direct and proximate cause, as well as a substantial factor, in bringing about the serious and distinct injuries to Plaintiffs that are outlined more fully above and, as a result, the defendants are liable to Plaintiffs for the full amount of statutory, actual and punitive damages, along with the attorney's fees and the costs of litigation, as well as such further relief as may be permitted by law for their violations of federal law.

### COUNT ONE – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. §§ 1681e(b), g, c-1 and i
### (SY Harris v. Lexis)

109.    SY Harris adopts and incorporates the above-numbered paragraphs as if fully stated herein.

110.    Lexis negligently failed to comply with the requirements of the FCRA, including Sections 1681e(b), g, c-1 and i.

111.    Alternatively, Lexis willfully failed to comply with the requirements of the FCRA, including Sections 1681e(b), g, c-1 and i.

112.    As a result of Lexis's failure to comply with the requirements of the FCRA, SY Harris suffered actual damages, described more fully above, for which she seeks actual, punitive and statutory damages, in an amount to be determined by the jury.

### COUNT TWO – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681s-2(b)(1)(A)
### (SY Harris v. Horace Mann)

113.    SY Harris adopts and incorporates the above-numbered paragraphs as if fully stated herein.

114.    On one or more occasion, Horace Mann failed to comply with the requirements of Section 1681s-2(b)(1)(A), by failing to fully and properly investigate SY Harris' disputes.

115.    SY Harris disputed the inaccurate information to Lexis.

116.    Upon information and belief, the consumer dispute verification form is the method by which Horace Mann agreed to receive consumer reports from Lexis pursuant to 15 U.S.C. § 1681i(a).

117.    Upon information and belief, Horace Mann received a consumer dispute verification form from Lexis related to SY Harris' dispute and after receipt of the dispute, Horace Mann followed its standard and systematically unlawful process where it only reviewed its own computer screen for the insurance claim and repeated back the same information to the consumer dispute verification system that was previously reported to Lexis.

118.    Upon information and belief, when Horace Mann receives a consumer dispute from Lexis, it does not conduct a substantive review of any sort to determine whether or not the information already in its computer system is accurate.

119.    As a result of Horace Mann's failure to comply with the requirements of the FCRA, SY Harris suffered concrete and particularized harm outlined more fully above.

120.    Horace Mann's conduct in violating of 15 U.S.C. § 1681s-2(b)(1)(A) as willful, rendering it liable to SY Harris for punitive damages in an amount to be determined pursuant to 15 U.S.C. §1681n. In the alternative, Horace Mann was negligent, entitling SY Harris to recover under 15 U.S.C. § 1681o.

### COUNT THREE – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681s-2(b)(1)(B)
### (SY Harris v. Horace Mann)

121.    SY Harris adopts and incorporates the above-numbered paragraphs as if fully stated herein.

122.    Horace Mann failed to comply with the requirements of Section 1681s-2(b)(1)(B), by failing to review all relevant information provided by Lexis.

123.     As detailed in Count Two, Horace Mann has elected to use Lexis' system for its FCRA disputes.

124.     Horace Mann is aware of the meaning of the dispute codes used by Lexis.

125.     Horace Mann does not contend that the consumer dispute verification form system is inadequate to receive FCRA disputes from CRAs.

126.     Horace Mann understood SY Harris' disputes and that she claimed the insurance claim did not belong to her.

127.     As a result of Horace Mann's failure to comply with the requirements of the FCRA, SY Harris suffered concrete and particularized harm outlined more fully above.

128.     Horace Mann's conduct in violating of 15 U.S.C. § 1681s-2(b)(1)(A) as willful, rendering it liable to SY Harris for punitive damages in an amount to be determined pursuant to 15 U.S.C. §1681n. In the alternative, Horace Mann was negligent, entitling SY Harris to recover under 15 U.S.C. § 1681o.

### COUNT FOUR – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. §§ 1681s-2(b)(1)(C) AND (D)
### (SY Harris v. Horace Mann)

129.     SY Harris adopts and incorporates the above-numbered paragraphs as if fully stated herein.

130.     Horace Mann failed to comply with the requirements of Sections 1681s-2(b)(1)(C) and (D), by publishing its representations within SY Harris' file without also including a notation that her account was disputed and by failing to correctly report results of an accurate investigation to each consumer reporting agency.

131.     Specifically, Horace Mann failed to add the appropriate compliance condition code ("CCC") to the CCC field in response to the consumer reporting agencies dispute notifications, which should have indicated that the insurance claim was in dispute.

132.    Upon information and belief, Horace Mann rarely, if ever, adds the appropriate CCC code or any other notation that the claim was disputed when it responds to the CRAs dispute notifications.

133.    Further, Horace Mann knew that SY Harris disputed the claim as not belonging to her.

134.    SY Harris' disputes were bona fide as the claim did not relate to her insurance history.

135.    As a result of Horace Mann's failure to comply with the requirements of the FCRA, SY Harris suffered concrete and particularized harm outlined more fully above.

136.    Horace Mann's conduct in violating of 15 U.S.C. §§ 1681s-2(b)(1)(C) and (D) as willful, rendering it liable to SY Harris for punitive damages in an amount to be determined pursuant to 15 U.S.C. §1681n. In the alternative, Horace Mann was negligent, entitling SY Harris to recover under 15 U.S.C. § 1681o.

## COUNT FIVE – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. §§ 1681b, e(b), c-1, g and i
### (SL Harris v. Lexis)

137.    SL Harris adopts and incorporates the above-numbered paragraphs as if fully stated herein.

138.    Lexis negligently failed to comply with the requirements of the FCRA, including Sections 1681b, e(b), g, c-1 and i.

139.    Alternatively, Lexis willfully failed to comply with the requirements of the FCRA, including Sections 1681b, e(b), c-1, g and i.

140.    As a result of Lexis's failure to comply with the requirements of the FCRA, SL Harris suffered actual damages, described more fully above, for which she seeks actual, punitive and statutory damages, in an amount to be determined by the jury.

**JURY DEMAND**

141.    Plaintiffs request a jury trial on all claims.

**PRAYER**

Wherefore, Plaintiffs pray for judgment against the defendants as follows:

On the First Claim for Relief:

 1.   Actual damages to be determined by the jury;

 2.   Punitive damages to be determined by the jury;

 3.   Statutory damages to be determined by the jury; and

 4.   Attorneys' fees and costs.

On the Second Claim for Relief:

 1.   Actual damages to be determined by the jury;

 2.   Punitive damages to be determined by the jury;

 3.   Statutory damages to be determined by the jury; and

 4.   Attorneys' fees and costs.

On the Third Claim for Relief:

 1.   Actual damages to be determined by the jury;

 2.   Punitive damages to be determined by the jury;

 3.   Statutory damages to be determined by the jury; and

 4.   Attorneys' fees and costs.

On the Fourth Claim for Relief:

 1.   Actual damages to be determined by the jury;

 2.   Punitive damages to be determined by the jury;

 3.   Statutory damages to be determined by the jury; and

 4.   Attorneys' fees and costs.

On the Fifth Claim for Relief:

1. Actual damages to be determined by the jury;

2. Punitive damages to be determined by the jury;

3. Statutory damages to be determined by the jury; and

4. Attorneys' fees and costs.

Respectfully submitted,

*/s/ Jared M. Lee, Esq.*
Jared Michael Lee, Esq.
   Florida Bar No.  0052284
**Jackson Lee | PA**
1985 Longwood Lake Mary Rd. | Ste. 1001
Longwood, FL 32750
Tel: (407) 477-4401
Fax: (407) 477-4949
Email: Jared@JacksonLeePA.com
           Service@JacksonLeePA.com
           Melissa@JacksonLeePA.com
*Counsel for Plaintiffs*
*SHANTELL YVONNE HARRIS and*
*SHONTELL LAVORA HARRIS*